Robin F. Wynne,' Justice, dissenting. 114The rape-shield statute provides that evidence of specific instances of the victim’s prior sexual conduct with any person is not admissible by the defendant, either through direct examination of any witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim or for any other purpose. Ark. Code Ann. § 16-42-101 (b) (Repl. 1999). An . exception is granted when the circuit court, at an in camera hearing, makes a written detei’mination that such evidence.is relevant to a fact in issue and that its probative value outweighs its inflammatory or prejudicial nature. Stewart v. State, 2012 Ark. 349, 423 S.W.3d 69. The statute’s purpose is to shield victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the pending charges, paraded before the jury and the public when such’ conduct is irrelevant to the defendant’s guilt. McCoy v. State, 2010 Ark. 373, 370 S.W.3d 241. In the present case, the evidence that semen on the victim’s bed sheet and pillow case belongéd to someone other than appellant falls under the rape-shield statute only if it belonged to someone other- than the .rapist. However, ' even accepting that the evidence at issue is governed by the rape-shield statute, I believe it was clear error or a manifest abuse of discretion to exclude it. Relevant evidence means evidence having' any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. R. Evid. 401 (2015). In the present case, the issue at trial was the identity of the rapist. The existence of semen at the scene of the rape that did not belong to appellant makes it less probable that he is the rapist; therefore, that |1Bevidence is relevant.[1] Under the rape-shield statute, evidence of prior sexual conduct is admissible only if' its probative value outweighs its inflammatory or-prejudicial nature. In the present ease, the evidence at issue is crucial for the defense theory of misidentification. On the other hand, it might be prejudicial to the victim if it were to force her to explain her sexual activities. However, the purpose for which the defendant sought to introduce the DNA testing is only to show that he is not a match — not to attack the credibility of the victim or in any way malign her. Considering the purpose of the rape-shield statute, I believe the probative value of the evidence outweighs any potential inflammatory or prejudicial effect. Finally, I cannot agree with- the State’s contention that the evidence of guilt in this ease was so overwhelming that any- error in excluding the. evidence at issue .was harmless. The majority correctly notes certain discrepancies between the statements of the two eyewitnesses, the victim and her neighbor, initially describing the perpetrator and their subsequent identifications of ’ appellant. In addition, the neighbor, Gary Eoff, told a detective that he believed the man was John, who was a dishwasher at the Cracker Barrel where he and appellant worked. Later, however, Eoff realized that John was a lot shorter than the man he had seen.' Both the victim and Eoff identified appellant after seeing his picture in the media as a person of interest in the case. The testimony regarding the forensic evidence established that no DNA from appellant was found at the erimé scene. However; the State h (¡also elicited testimony regarding why DNA might not be found at a -crime scene and implying that it- is common not to find DNA evidence. Regarding the State’s theory that, there would be no semen because, as stated by the victim, the rapist did not ejaculate, the following colloquy took place with the state crime-lab forensic serologist, who was qualified as an expert: ■ Q: If an allegations [sic] in a case do not include that someone-had ejaculated, it is [gic] surprise not to find semen, just, in general? I’m not talking specifically to this case.' A: It can go both ways. If — -if you hear " that ' information, you probably wouldn’t find anything. But it’s— from case to case it 'changes. Q: Sure, absolutely. A: Somebody might have memory or something. Somebody might not have memory. I always look just to see — -just to be sure. Notably, there -was no other medical evidence on this' point: The jury was left with the false impression that no semen had been found at the crime scene, and Thacker was denied the opportunity to present information critical to his defense of misidentification. [1] For the foregoing reasons, I believe the trial court committed clear error or a manifest abuse of discretion in excluding the evidence at issue. Therefore, I respectfully dissent. Danielson, J., joins. . Of course, the jury would be entitled to give this evidence whatever weight it.chose..